Douglass, J,
This action was originally brought before a justice of the peace. On appeal it was tried in the court of common pleas, and resulted in a verdict for the defendants; and, to reverse this, error is prosecuted to this court. It grows out of the fact that the defendants, in 1.890, purchased a binder or harvester’ from the William N. Whitely Company. The purchase was made through an agent, W. T. Alward. The company was then in the hands of a receiver, and some cash was probably paid. At any rate, three notes were given, and this action is brought upon the third note. The original amount was $36 with accumulated interest. This third note of the series was transferred by the company. The receivership was raised,and the company, after the discharge of the receiver, transferred the note in controversy to the plaintiff Wylie Smoots, after due, for value. The defense is that this machine was warranted by a special warranty; and this warranty, qualified as it was, is in evidence in the record. It extended over a period of three years.
*613 A question, however, quite apart from the real merits of the case, is submitted here. That is, that when the verdict was rendered on a certain Friday, it was sealed and placed in the hands of the clerk. On the incoming of the jury on Monday, the verdict was to be, as is usual, read in open court. Counsel,however, on account of curiosity or interest, concluded that they would open the verdict. They did so, and nothing further was done. It was ascertained, however, what the verdict -was, and on the incoming of the court the verdict was read as if it had not been opened, and it appeared that the verdict was for fifty-one dollars and odd cents in favor of the defendants on their warranty. The court then, doing what he would have done had the verdict not been opened, but had been opened there as a sealed verdict, and as, we think,properly, instructed the'jury that they did not follow his instructions, and re-instracted them on the proposition as to how the damage on the warranty should be regarded. The jury were sent out, and they returned a verdict in accordance with what we think was a proper instruction and the law upon that proposition. Now it is sought to reverse this case because of the simple fact that the attorneys in this case, representing their clients of course, opened this verdict. We think that this is net well taken. We think there is really nothing in this claim; there was no prejudice at any rate. Everything was done as it would have been done; and it does not lie in the mouth of the party who did, if anything, an impropriety, if it could be called that, to come in and ask to have this case reversed. Therefore, there is nothing in that contention.
Objections are raised to the evidence admitted; to the charge of the court respecting this- warranty, and as to the measure of damages. The substance of the warranty was that if there should be any defective construction in any part or parts of the machine, those would be at once supplied on notice to the company, covering a period of three years. Counsel for plaintiff claims that the court has not followed the rule which the authorities say should govern a case of this kind, as to the measure of damages. Counsel contend that it should be confined strictly to the value of this machine with the defect,and what would be the value of the machine as warranted to be. We are cited to a number of authorities which we have examined. Wood’s Mayneon *614 Damages, section 224: “When article has not been returned. Where the article has not been returned, the measure of damage will be the difference between its value, with the defect warranted against, and the value which it would have borne without that defect.” That rule is the one that is contended for here as controlling this case, and as being the proper one,
Before the expiration of the time that this machine was warranted for, they began their harvest, and the drive-wheel was broken; the record discloses fairly that it was not by the fault of the defendants, it was covered by this warranty. Counsel sought to show the time of the parties in getting notice to the company; their delay, and even tried to show the injury to the crop of ripened grain in view of the fact that other machines could not be had at that time of year. The court, however,did not permit them to go into evidence on the subject of depreciation,the ripening of the crop and its consequent destruction by reason of that.
The court instructed the jury as follows on this point:
“And if you find that they did give notice in proper time to the company, and that the company did not repair the same, then the defendants had the right either to abandon the machine at that time, and bring their action on the warranty, or they could retain it and procure the repairs themselves; and the cost of repairs,' — their time and labor in serving the notice and going after the machine under the instructions and directions of the agent of the company, and all they did in the matter, necessary to be done by them to properly repair the machine, are proper amounts to recoup against the note. The court instructs you that whatever was necessary to be done, and the fair value of all these matters that the court has enumerated, — the purchasing of the wheel, if you find they did, and what it cost the defendants, — the cost price at the machine shop is not to be your guide — what did it cost these defendants, and the expense they were put to in and about procuring it, and hauling it to the farm, and putting it on the machine. For, it was the duty of the company .to have done this work for them, and if it did not do so, it is responsible to the defendants, for what it cost these defendants.”
Thus the court did permit them to show the time in getting notice to the company, and all the necessary and *615 direct incidents that grew out cf the loss and delay.
The rule is not an iron-clad one, and the facts and circumstances in each case must be the criterion by which this matter can be determined in order to do justice between the parties. When a wheat-crop is ready to cut and an absolute warranty has been made, or even if it was an implied warranty that the machine was reasonably fit for the purposes for which it was intended, the hands had collected, and the machine, as against this warranty, broke down, and there was delay, loss of the time of hands, loss of crops, the rule would be pretty broad as to the measure of damage that would do justice between the parties. But, however, the court limited that, as we think, within the proper sphere in this case. We can see how this rule is varie.d under the circumstances. In Wood’s Mayne on Damages, some veiy radical cases are given:
“In another case, where a link in a chain cable, which had been sold with warranty, broke, it was held that the value of the anchor which was lost along with it might be recovered. But this case was treated as of no authority in Hadley v, Baxendale. And Alderson, B., said that on the same principle the jury might have given the value of the ship, if it had been lost. ' No doubt the enormity of the damages which would be recoverable in such a case is very startling, But if a chain cable is sold for the express purpose of holding a ship to its anchor, and if, through some defect in it, the ship drifts on shore, it is difficult to see why the damages should stop at any smaller amount. Where the pole of a carriage broke, in consequence of which the horses became frightened and were injured, the court held that the sale of the pole carried with it an implied warranty that it was reasonably fit for its purpose; and that as to damages, the proper question to leave to the jury was,'whether the injury to the horses was or was not a natural consequence of the defect in the pole.”
I simply read that to show that in cases of this kind the real measure of damages is always governed by the subject matter in hand, and the surroundings and situation of the parties, and that there is no iron-clad rule that can be laid down that will fit all these cases.
W. T. Alward was agent for the'company at the time of the purchase of the machine; there was a receiver appoint *616 ed for the company; the receivership was abandoned and raised; the company got possession again, and he went out of employment.' When this breakage occurred they came to W. T. Alward, from whom they had purchased the machine. He had a right to make this warranty, and did make it. They sought advice from him, and he corresponded with the company. It is said that there was error here in showing that he had been resorted to, and what he did. It is very apparent that it was perfectly proper to have as a witness W. T. Alward from whom this purchase was made and who made the warranty,at the time when he had authority to bind the company,as far as he did not transcend his authority. This testimony was simply introduced to show the diligence of these parties in seeking to give notice to the company; and not only that, but it was the reasonable and proper thing for ihem to do, to seek out the man and have a hearing within the shortes ttime. They did communicate with this company, and they sought out the means that was the most available. And looking this record through, there isn’t anything that we see that prejudiced the plaintiff in any way in reference to the testimony of Alward, The question of the declarations hereof the discharged agent to bind the company does not operate in this case to the prejudice of the plaintiff.
J. E. Davis, on behalf of Plaintiff in Error.
J. M. Swartz, on behalf of Defendant in Error.
Three specific requests were asked, which we think were too narrowly limited. We think the court did not travel beyond what he ought to have charged the jury respecting what the real measure of damages in this case was, and these requests were properly refused. One of these requests was as to this man Alward,and it is answered by what I have said: “That if A. T. Alward was no longer the agent of the company when the machine failed to work properly, but his authority to act for the company had been revoked, notice to the agent would not be notice to the company, and his acts and declarations are not admissible against the company.”
That would be true as an abstract proposition of law,but it does not apply to this case in the way in which his services were used. He was a competent witness as to proving this warranty. As to his communicating with the company,there is no question about the fact that the letter was written,and whether he did it or anybody else, it simply reflected upon their diligence, and the best means to get notice to the company, and could not,in any way,have mislead the jury. We think the charge in this case was right. Judgment affiimed.